IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| TASHA FRANKLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13-2263-STA-dkv |
| vs. ) | |
| ) | |
| BURLINGTON NORTHERN SANTA FE ) | |
| (BNSF) RAILWAY, ) | |
| ) | |
| Defendant. ) | |

_____

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
_____

On April 30, 2013, the plaintiff, Tasha Franklin, filed a *pro se* complaint against the defendant, Burlington Northern Santa Fe (BNSF) Railway ("BNSF"), alleging gender discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). (Compl., ECF No. 1.) This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

Now before the court is the April 10, 2014 motion of BNSF for summary judgment. (Def.'s Mot. for Summ. J., ECF No. 12.) Franklin failed to file a response in opposition, and the time

for doing so has expired. For the reasons set forth below, it is recommended that the motion for summary judgment be granted.

## I. PROPOSED FINDINGS OF FACT

Under Rule 56(c)(1) of the Federal Rules of Civil Procedure, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Rule 56(e) provides:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

Because Franklin has failed to file a response to BNSF's statement of undisputed facts, the court adopts BNSF's proposed factual findings as undisputed. Fed. R. Civ. P. 56(e)(3). For purposes of this summary judgment motion, the court therefore finds the following facts are undisputed:

Franklin graduated from Texas Tech University in December of 2008. (Def.'s Statement of Undisputed Material Facts ¶ 8, ECF No. 13-1.) While in college, she served two summer internships with BNSF, one in Temple, Texas, and the other in Kansas City, Kansas. (*Id*. ¶¶ 6, 7.) BNSF offered Franklin a permanent job as a Mechanical Management Trainee at its Kansas City, Kansas train yard after she graduated, which she accepted. (*Id*. ¶¶ 9, 10.) In January 2009, Franklin began her permanent job with BNSF. (*Id*. ¶ 10.) After completing her training, Franklin assumed the position of Mechanical Foreman at the train yard in Kansas City. (*Id*. ¶ 12.) In June 2009, Franklin was promoted to Mechanical Foreman I, (*Id*. ¶ 14), and in October 2009, she received another promotion to Warehouse Supervisor, (*Id*. ¶ 15.).

While Franklin was working in Kansas City, Mark Grubbs, Zone Superintendent for Zone 8, which includes Memphis, informed Franklin of a Mechanical II Foreman opening in Memphis. (*Id*. ¶ 17.) Franklin interviewed for the position with the hiring manager, General Foreman II Rudy Jaramillo, and a Human

3

Resources representative. (*Id.* ¶ 18.) With Grubbs' approval, Jaramillo offered Franklin the position, and Franklin accepted and assumed the position of Mechanical Foreman II on December 1, 2010. (*Id.* ¶¶ 19, 20.) As Mechanical Foreman II, Franklin had approximately 120 employees who reported directly or indirectly to her, six of whom were Mechanical I Foremen. (*Id.* ¶ 22.)

Both before her promotion and after her promotion, Franklin had several performance issues and write-ups. On August 7, 2009, Franklin received a verbal caution for failing to report a defective car. (*Id.* ¶ 26.) On July 13, 2010, Franklin received counseling for failing to complete her Operations Tests required for the second quarter of 2010. (*Id.* ¶ 27.) On March 1, 2011, Franklin received a counseling letter for failure to timely report damage to her company vehicle. (*Id.* ¶ 30.) On August 17, 2011, Franklin received a Letter of Formal Reprimand for driving her vehicle on a live track and colliding with a rail car. On January 12, 2011, Franklin received another counseling for failing to timely comply with the company safety testing requirements. (*Id.* ¶ 31.)

On July 30, 2012, during a meeting with the car men in the train yard, one car man, Jeremy Waller, complained about work left by the prior shift for his shift. (*Id.* ¶¶ 32, 33.) According to the sworn testimony of a co-worker, Waller said he was "going to get a gun and go Colorado up in here." (*Id.* ¶

4

33.) The theatre shooting at Aurora, Colorado had occurred ten days before his comment. (*Id*. ¶ 34.) Franklin had previously heard Waller refer to "Colorado" and had warned him about such comments. (*Id*. ¶ 34.)

BNSF's Violence in the Workplace policy requires employees to report threats of violence to the Company's Resource Operations Call Center and local management and human resources. (*Id*. ¶ 36.) Franklin did not report the incident to the call center, to local management, or to human resources, but another employee reported it to the company's hotline. (*Id*. ¶¶ 37, 38.)

BNSF assigned Special Agent Preston Connell to investigate the incident. (*Id*. ¶ 39.) On July 30, 2012, Connell interviewed Franklin by phone. (*Id*. ¶ 40.) During the interview, Franklin admitted that she heard Waller say he was going to get a gun and go Colorado and that she did not confront Waller about the comment. (*Id*.) On July 31, 2012, Connell interviewed four of the employees present at the meeting, and two confirmed what Waller had said. (*Id*. ¶ 41.) Connell and Jaramillo suspended Waller, and Waller called Franklin to advise her that he had been suspended. (*Id*. ¶ 43.) On August 1, 2012, Connell interviewed Franklin in person. During this face-to-face interview, Franklin stated that she no longer remembered Waller stating he was going to get a gun, but she admitted that she had previously reprimanded him about similar inappropriate

5

comments but did not speak to him about this comment. On August 2, Human Resources Director Don Anderson, Zone Superintendent Grubbs, and General Foreman II Jaramillo interviewed Franklin. (*Id.* ¶ 46.) According to the sworn testimony of Grubbs and Jaramillo, Franklin changed her story three times during the interview. (*Id.*) On August 2, 2012, BNSF placed Franklin on administrative leave, and on August 21, 2012, Grubbs terminated Franklin for failure to conduct herself consistent with BNSF's Leadership Model, including her failure to take action regarding the comment and her failure to cooperate with the Company in the investigation of a workplace violence threat. (*Id.* ¶ 49.)

The month prior to Franklin's termination, BNSF had held a picnic for the Mechanical Foremen on July 14, 2012. (*Id.* ¶ 50.) During the picnic, while Franklin was seated in a chair, one of the Mechanical Foremen, allegedly Jaramillo, threw firecrackers under the chair which exploded near Franklin's legs. (*Id.* ¶ 51.) Mechanical Foreman I Brad Ables, Mechanical Foreman I Sean Busse, and Jaramillo, all observed and laughed. (*Id.*) Franklin suffered no injuries as a result of the incident, and Franklin never spoke to Jaramillo about the incident. (*Id.* ¶¶ 51, 52.) Nor did Franklin report the incident to the Human Resources Director or anyone in Human Resources or call the company hotline. (*Id.* ¶¶ 53, 54.)

Franklin alleges in her complaint that "[she] was repeatedly told that [she] couldn't be 'dealt' with or had to be treated 'differently' because she was female." (Compl. 3, ECF No. 1.) Specifically, in her deposition, Franklin alleges that once in March 2011 and again in May 2011, Jaramillo informed her that it was the first time he had supervised a woman and he had to communicate differently with her because she was a woman. (Def.'s Statement of Undisputed Material Facts ¶ 57, ECF No. 13-1.) Franklin informed Grubbs, her Zone Superintendent, about the comments, who encouraged her to talk to Jaramillo about the comments. (*Id*. ¶ 57.) Grubbs also encouraged Franklin to talk to Human Resources, but she never did. (*Id*.)

Franklin filed a charge against BNSF with the Equal Employment Opportunity Commission ("EEOC") on October 23, 2012, alleging discrimination based on sex and retaliation for complaining of harassing comments based on sex. (*Id*. ¶ 61.) The EEOC issued a Notice of Right to Sue on February 7, 2013. (*Id*. ¶ 62.)

## II. PROPOSED CONCLUSIONS OF LAW

In her complaint, Franklin claims that BNSF discriminated against her by terminating her on the basis of sex. (Compl., ECF No. 1.) She also claims she was harassed because of her

7

sex.  (*Id.*)[1]   BNSF seeks summary judgment on both Franklin's claims.

A.   Standard on Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993); *Osborn v. Ashland Cnty Bd. of Alcohol, Drug Addiction & Mental Health Servs.*, 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam).  The moving party has the burden of showing that there are no genuine issues of material fact at issue in the case.  *LaPointe*, 8 F.3d at 378.  This may be accomplished by pointing out to the court that the nonmoving party lacks evidence to support an essential element of its case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

In response, the nonmoving party must go beyond the pleadings and present significant probative evidence to demonstrate that there is more than "some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993); *see also LaPointe*, 8 F.3d at 378.

---

[1] Franklin did not allege retaliation in her complaint.

8

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247—48 (1986); *LaPointe*, 8 F.3d at 378.

In deciding a motion for summary judgment, the "[c]ourt must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993)(quoting *Anderson*, 477 U.S. at 251—52). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Patton*, 8 F.3d at 346; *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). However, to defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252; *LaPointe*, 8 F.3d at 378. Finally, a court considering a motion for summary judgment may not weigh evidence or make credibility determinations.

9

*Anderson*, 477 U.S. at 255; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

Franklin has not responded to BNSF's motion for summary judgment. Pursuant to local rule, failure to timely respond to a motion may be deemed good grounds for granting the motion. However, that rule does not apply to motions requesting the dismissal of a claim or action. *See* Local Rule 7.2(a)(2). Thus, despite the fact that Franklin has not responded to BNSF's motion, this court must determine if the motion and supporting material – including the facts considered undisputed - show that BNSF is entitled to summary judgment. Fed. R. Civ. P. 56(e)(3); *Stough v. Mayville Cnty. Schs.*, 138 F.3d 612, 614 (6th Cir. 1998). Nevertheless, the failure to respond to a motion for summary judgment inevitably hinders a plaintiff's ability to avoid summary judgment as the plaintiff will not have set forth any affidavits or other materials setting forth specific facts to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(1).

B. Franklin's Gender Discrimination Claim

BNSF argues that Franklin cannot establish a *prima facie* case of gender discrimination under Title VII, and even if she could establish a *prima facie* case of discrimination, she cannot demonstrate that BNSF's legitimate, non-discriminatory reasons for its actions are pretextual.

10

When there is no direct evidence of sex discrimination shown, Title VII claims are governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later modified by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). To establish a *prima facie* case of sex discrimination, a plaintiff is required to show that: (1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) similarly situated non-protected employees were treated more favorably. *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004). Once the plaintiff makes this showing, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006).

The fourth element of a *prima facie* case requires that Franklin show that a non-protected male employee was similarly situated and treated more favorably by BNSF. Franklin, however, cannot identify and has not identified any other Mechanical Foreman II who failed to report a serious threat of workplace violence and received as many warnings and write-ups as she did, and who was not terminated. Thus, Franklin cannot satisfy the fourth element of a *prima facie* case of gender discrimination, and her claim of gender discrimination fails as a matter of law.

Even were the court to assume, for the sake of argument, that Franklin could establish a *prima facie* case of gender discrimination, BNSF has offered a legitimate, nondiscriminatory reasons for terminating Franklin: she failed to report or address a serious threat of workplace violence by one of her subordinates in violation of BNSF's Violence in the Workplace Policy, and she subsequently altered her story during BNSF's investigation.

Because BNSF has offered a legitimate, nondiscriminatory reason for its termination of Franklin, the burden now shifts back to Franklin to show pretext. In the Sixth Circuit, a plaintiff may establish pretext in any of three ways: (1) by showing that the proffered reason had no basis in fact; (2) by showing that the proffered reason did not actually motivate the adverse action; or (3) by showing that the proffered reason was insufficient to motivate the action. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004). The question is whether the plaintiff has produced sufficient evidence from which a jury could reasonably doubt the defendant's explanation. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Franklin offers no argument or evidence regarding pretext to rebut BNSF's proffered reason for Franklin's termination, and the court can find none. Accordingly, BNSF's motion for summary

judgment as to Franklin's gender discrimination claim should be granted.

C. Franklin's Hostile Work Environment Claim

A hostile work environment claim is comprised of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). In *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993), the Supreme Court recognized that a hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.*, 510 U.S. at 21 (internal brackets, quotation marks, and citations omitted); *see also Burlington Indus. v. Ellerth*, 524 U.S. 742, 754 (1998)(reaffirming the "severe and pervasive" test); *Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998)(same). In determining whether harassment is sufficiently severe and pervasive, a court must consider the "totality of the circumstances." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999).

To establish a *prima facie* case of a hostile work environment based on sex, the plaintiff must show the following five elements: (1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on her sex; (4) the harassment created a hostile work

environment; and (5) the existence of employer liability. *Williams*, 187 F.3d at 560; *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). A hostile work environment plaintiff must also meet both a subjective and an objective test. She must show that the environment "was objectively hostile, and also that she subjectively perceived it to be hostile." *Williams*, 187 F.3d at 564 (citing *Harris*, 510 U.S. at 21 and *Faragher*, 524 U.S. at 787). In the present case, BNSF attacks the third and fourth elements of Franklin's *prima facie* case - whether Franklin was harassed because of her gender and whether the alleged harassment was sufficiently severe and pervasive to create a hostile work environment.

Franklin bears the burden of showing that the conduct she complains of occurred on account of her gender. Title VII is not intended to serve as a "general civility code." *Faragher*, 524 U.S. at 2283-84; *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . [race]."). Furthermore, "personal conflict does not equate with discriminatory animus." *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 791 (6th Cir. 2000).

Franklin has failed to present sufficient evidence to establish that she was harassed because of her gender. At best,

Franklin can only show that two alleged comments by Jaramillo about how he had never managed a female before were based on gender, and these two comments do not rise to the level of sexual harassment. Franklin has not offered any proof that the firecracker incident was based on her gender. Indeed, according to BNSF, Franklin admitted in her deposition that a male employee had firecrackers thrown at him. (Mem. in Support of Def.'s Mot. for Summ. J. 11, ECF No. 13.)

Nor can Franklin show that the alleged harassment was severe and pervasive as required by the fourth element of a *prima facie* case. The two purported comments by Jaramillo and the firecracker incident do not amount to a hostile environment.

Accordingly, it is recommended that BNSF's motion for summary judgment on Franklin's hostile work environment claim be granted.

D.  Franklin's Retaliation Claim

Franklin included a claim of retaliation in her EEOC charge attached to her complaint but failed to allege retaliation in her complaint. Even if the court were to construe Franklin's complaint as including a claim of retaliation, the claim fails. To establish a *prima facie* case of retaliation, Franklin must show:

> (1) he engaged in activity protected under Title VII;
> (2) the defendant knew that he engaged in the protected activity, (3) the defendant subsequently

15

> took an adverse, retaliatory action against the
> plaintiff, or the plaintiff was subjected to severe or
> pervasive retaliatory harassment by a supervisory, and
> (4) the protected activity and the adverse action were
> causally connected.

*Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 736 (6th Cir. 2006). If Franklin succeeds in establishing a *prima facie* case, the burden then shifts to BNSF to articulate a legitimate, nondiscriminatory reason for the adverse action. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000). If BNSF carries this burden, then Franklin "must prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Id.*

Franklin does not allege any protected activity in her complaint or facts upon which a causal connection between her termination and any protected activity could be found. Franklin testified at her deposition in March 2011 that she complained to Grubbs, her Zone Superintendent, about Grubbs's comments that it was the first time he had supervised a woman and he had to communicate differently with her because she was a woman. Grubbs terminated Franklin in August 2012, nearly a year and half later. Even if her discussion with Grubbs could be considered protected activity, the lapse of seventeen months is too long from which to infer causal connection based on temporal proximity.

Accordingly, to the extent Franklin's complaint can be construed as encompassing a claim of retaliation, BNSF is entitled to summary judgment on the claim.

III. RECOMMENDATION

There are no disputed facts, and BNSF is entitled to summary judgment as a matter of law. For the foregoing reasons, it is recommended that BNSF's motion for summary judgment be granted.

Respectfully submitted this 27th day of May, 2014.

                                        s/Diane K. Vescovo
                                        DIANE K. VESCOVO
                                        UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.